UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL LOOLARA, ET AL. | CIVIL ACTION |
| VERSUS | |
| NATIONAL FLOOD INSURANCE PROGRAM, ET AL. | NO. 17-00953-BAJ-EWD |

### RULING AND ORDER

This flood insurance dispute arises from the historic Baton Rouge flood of August 2016. Before the Court is **Defendants' Motion For Summary Judgment As To Count I Of Plaintiffs' Amended Complaint (Doc. 32),** seeking dismissal of Plaintiffs' claim for additional payment under their Standard Flood Insurance Policy ("SFIP")[1], due to Plaintiffs' failure to strictly comply with the SFIP's proof of loss requirements prior to filing suit. Also before the Court is Defendants' **Motion to Dismiss (Doc. 46)**, seeking dismissal of Plaintiffs' claims under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* ("APA"), and the mandamus statute, 28 U.S.C. § 1361, on the basis that these statutes are inapplicable to the instant dispute. Plaintiffs oppose Defendants' Motions. (Docs. 37, 47).

For reasons to follow, Defendants' Motions will be granted, and Plaintiffs' action will be dismissed with prejudice.

I.  **SUMMARY JUDGMENT EVIDENCE**

Plaintiffs own a home located at 11222 Blackwater Road, in Baker, Louisiana.

---

[1] The SFIP appears at Appendix A(1) to Title 44, Part 61 of the Code of Federal Regulations. 44 C.F.R. Pt. 61, App. A(1).

(Doc. 37-1 at ¶ 2). At all relevant times, Plaintiffs' home was insured against flood losses by a SFIP, No. SF00309517, issued by Defendant National Flood Insurance Program (NFIP). (*Id.* at ¶¶ 1, 3).

Plaintiffs' home was inundated by more than five feet of water during the August 2016 Baton Rouge flood event. (*Id.* at ¶¶ 6, 9). On August 15, 2016, Plaintiffs made an initial claim for losses under their SFIP, which resulted in payments of building damages in the amount of $197,923.49 (after the $2,000 deductible), and contents damages in the amount of $29,000. (*Id.* at ¶¶ 6-8, 13).

On July 31, 2017, Plaintiffs, through their attorneys (the Pandit Law Firm), submitted a Supplemental Proof of Loss to Defendants, seeking to recover the remainder of the SFIP's $250,000 limit ($52,076.51, total). (*Id.* at ¶¶ 14-15). The Supplemental Proof of Loss was electronically signed by Plaintiff Michael Loolara on July 24, 2017, and attached a 68-page "Estimate" detailing various damages to Plaintiffs' home, *including* damages for items already reimbursed by Defendants' initial payments. (*Id.* at ¶¶ 16-17). Plaintiffs' Supplemental Proof of Loss did not identify an "Agent," (Doc. 32-4 at 47); the Estimate identified Pandit Law—and *only* Pandit Law—as both the "Estimator" and the "Claim Representative." (Doc. 32-4 at 49). In fact, Pandit Law did not prepare the Supplemental Proof of Loss *or* the Estimate; instead, each was prepared by third-party adjuster Tommy Tompkins of ATA Consulting, LLC (Pandit Law's retained expert). (Doc. 32-5 at 41, 58).

On August 7, 2017, Defendants issued a denial letter rejecting Plaintiffs' Supplemental Proof of Loss, citing "[in]sufficient documentation to support a

payment in the amount requested." (Doc. 32-5 at 17). The August 7 denial explained further:

> We received a flood damage estimate from Pandit law Firm [sic] but he does not appear to be the contractor hired to complete the actual repairs. Any supplemental claim for the costs of covered building repairs and replacements should be supported with documentation of incurred costs, such as a signed contract and itemization with a licensed contractor, contractor(s) invoice(s), cancelled checks, and other proof that the repairs are in progress or have been completed. The flood policy requires that the policyholder provide us documentation of the actual cost to repair the flood damage.

(Doc. 32-5 at 17). Thereafter, the August 7 denial specifically directed Plaintiffs' attention to the SFIP's proof of loss requirements, set forth at SFIP article VII(J) ("Requirements in Case of Loss"). (Doc. 32-5 at 17-18).

Following Defendants' August 7 denial, Plaintiffs did not submit additional documentation supporting their Supplemental Proof of Loss. (Doc. 32-4 at 7).

## II. RELEVANT PROCEDURAL HISTORY

On October 9, 2017, Plaintiffs filed this lawsuit, alleging breach of the SFIP based on Defendants' rejection of their Supplemental Proof of Loss, and seeking to recover the remainder of the SFIP limit. (Doc. 1).

On August 2, 2018, Plaintiffs amended their complaint to add claims for relief under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* ("APA"), and the mandamus statute, 28 U.S.C. § 1361. (Doc. 14 at 9-11). These new claims added no additional substance to Plaintiffs' original complaint, but merely sought to compel Defendants to adjust Plaintiffs' Supplemental Proof of Loss in their favor. (*See id.*).

On August 16, 2018, Defendants filed their motion to dismiss Plaintiffs' newly added APA and mandamus claims, arguing that Plaintiffs cannot obtain relief under

3

either of these statues because they are plainly inapplicable to this dispute. (Doc. 46).

On September 4, 2020, Defendants moved for summary judgment on Plaintiffs' breach of contract claim, arguing that Plaintiffs are not entitled to any additional payment under the SFIP because Plaintiffs failed to strictly adhere to the SFIP's proof of loss requirements when submitting their Supplemental Proof of Loss. (Doc. 32).

Collectively, Defendants' Motions seek wholesale dismissal of Plaintiffs' action. Plaintiffs oppose Defendants' Motions. (Docs. 37, 47).

### III. DISCUSSION

The Court addresses Defendants' summary judgment motion first, because its outcome affects the Court's analysis of Defendants' motion to dismiss.

#### A. Defendants are entitled to summary judgment dismissing Plaintiffs' breach of contract claim

##### i. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Stated differently, "[i]f the party with the burden of proof cannot produce any summary judgment evidence on an essential element of his claim, summary judgment is required." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

4

"This Court has repeatedly admonished that summary judgment is about *evidence*, and a party that fails to direct the Court's attention to any evidence supporting his claims cannot carry his burden of showing a genuine, material dispute (or lack thereof)." *CMFG Life Ins. Co. v. Lee*, 20-cv-00157, 2021 WL 1395768, at *1 (M.D. La. Apr. 13, 2021) (Jackson, J.) (citing authorities).

### ii. SFIP Construction

The U.S. Court of Appeals for the Fifth Circuit has repeatedly advised that the SFIP "must be strictly construed and enforced." *Gowland v. Aetna,* 143 F.3d 951, 954 (5th Cir. 1998). "The terms of the SFIP are dictated by FEMA, and cannot be waived or modified by [any party]," *including* the defendant insurer. *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. 2005).[2] These strict rules of construction *cannot* be relaxed, even if a "harsh" result follows. *Id.* at 387 (5th Cir. 2005) (discussing *Gowland,* 143 F.3d at 955); *accord Cohen v. Allstate Ins. Co.*, 924 F.3d 776, 782 (5th Cir. 2019) ("[N]ot even the temptations of a hard case will provide a basis for ordering recovery contrary to the terms of a *regulation*, for to do so would disregard the duty of all courts to observe the conditions defined by Congress for charging the public treasury." (alterations omitted; quoting *Forman v. Fed. Emergency Mgmt. Agency*, 138 F.3d 543, 545 (5th Cir. 1998)).

### iii. Discussion

Defendants contend that Plaintiffs' breach of contract claim fails because Mr.

---

[2] The SFIP itself expressly states that its terms "cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator." SFIP, art. VII(D) (Amendments, Waivers, Assignment).

5

Loolara's signed Supplemental Proof of Loss was not based on his own judgment, failed to state a specific sum of damages, and was not supported by a competent assessment of damages to Plaintiffs' home. For reasons explained below, the Court determines that Mr. Loolara's failure to use his own judgment when preparing the Supplemental Proof of Loss is dispositive, and therefore does not address Defendants' alternative arguments.

### a. Plaintiffs' breach of contract claim fails because Mr. Loolara's deposition testimony establishes that the Supplemental Proof of Loss was not based on his own judgment

In relevant part, the SFIP requires an insured to submit to the insurer a "proof of loss, which is *your* statement of the amount you are claiming under the policy signed and sworn to by *you*." SFIP, art. VII(J)(4) (emphasis added). The SFIP further provides that "[i]n completing the proof of loss, *you must use your own judgment* concerning the amount of loss and justify that amount." SFIP, art. VII(J)(5) (emphasis added).

The strict rules of construction governing the SFIP apply squarely to SFIP's proof of loss requirements. *Sun Ray Vill. Owners Ass'n v. Old Dominion Ins. Co.*, 546 F. Supp. 2d 1283, 1289 (N.D. Fla. 2008) ("Strict adherence to the proof of loss requirements is a condition precedent to recovery under the SFIP."); *accord Gowland*, 143 F.3d at 954 ("[A]n insured's failure to provide a complete, sworn proof of loss statement, as required by the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise might be a valid claim."). "Substantial compliance is not sufficient; rather, an insured must completely satisfy the proof of loss

6

requirements before any monetary claim can be awarded." *Sun Ray Vill. Owners Ass'n*, 546 F. Supp. 2d at 1289 (citing *Sanz v. U.S. Sec. Ins. Co.*, 328 F.3d 1314, 1318 (11th Cir. 2003)).[3] Relevant here, the proof of loss statement must be that "of the insured, *not of some third party*." *Mancini v. Redland Ins. Co.*, 248 F.3d 729, 738 (8th Cir. 2001) (emphasis added).

Defendants argue that Plaintiffs cannot recover any additional sums under the SFIP because the summary judgment evidence establishes that Mr. Loolara's Supplemental Proof of Loss was *not* based on his "own judgment," but was instead prepared solely for the purpose of pursuing litigation, based on the judgment of his attorneys and their experts, Tommy Tompkins and ATA Consulting. (Doc. 32-1 at 9). In support, Defendants cite Mr. Loolara's deposition testimony, where Mr. Loolara was unable to answer even the most basic questions regarding the Supplemental Proof of Loss and Estimate. To wit:

- **Mr. Loolara did not know that ATA Consulting, not Pandit Law, prepared the Proof of Loss and Estimate on his behalf:**

    Q: Do you know who prepared this estimate for you?

    A: Pandit.

    Q: Pandit, okay. And I see Pandit Law is the estimator on the front page of this estimate …, correct.

    A: That is correct.

    Q: In your initial disclosures … there is an estimator identified as ATA Consulting. Do you know if ATA assisted with – assisted Pandit Law to prepare this estimate?

---

[3] To remove any doubt, the SFIP expressly provides, "You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy." SFIP, art. VII(R).

7

A: I'm not aware.

(Doc. 32-5 at 28-29, Loolara Dep. 63:17-64:5).

- **Mr. Loolara could not confirm whether and when a representative of ATA Consulting inspected his home:**

Q: Did anyone from … ATA Consulting come to your home to inspect the property?

A: I believe that we set up a time for someone to come and reinspect the home. In fact, yes, they did.

Q: From ATA?

A: I don't recall the name.

Q: Do you know if that company or person was hired by Pandit Law to inspect?

A: I would assume that that's what occurred.

Q: So where I'm going is, did someone from Pandit Law or someone from ATA come to your home to inspect . . . your house?

A: Yes.

Q: And do you know who it was?

A: I don't recall.

(Doc. 32-5 at 29, Loolara Dep. 64:6-24).

Q: … With regard to the estimate, did someone come to your house from -- to reinspect your home?

A: I believe so.

Q: Do you know the date and time of that inspection?

A: I do not.

Q: Do you know if it was in the last year, i.e., 2018 through 2019? No, I'm sorry, because the date of the letter is 2017. I apologize.

A: I don't recall the date.

Q: So, someone came to your home before this letter was submitted in 2017,

8

correct?

A: I would assume so, yes.

(Doc. 32-5 at 30, Loolara Dep. 65:12-25).

- **Mr. Loolara could not explain the numbers appearing on his Supplemental Proof of Loss:**

Q: … And who filled out this proof of loss?

A: I believe it was prepared by Pandit.

Q: Did you have a chance to review the numbers on the proof of loss before it was submitted to FEMA?

A: Uh-huh (affirmatively). Yes.

…

Q: And if we look down here at the bottom, line 9, it says net amount claimed. It has Two Hundred Fifty Thousand (250,000.00), correct?

A: That is correct.

Q: And that is your policy limit for coverage A, correct?

A: That is correct.

Q: … So regarding line 5, do you know how the amount of Four Hundred Seventeen Thousand Eight Hundred Sixty-Six Dollars and Thirty-Four Cents ($417,866.34) was calculated?

A: I believe it was -- I believe they take all of the measurements, put in into like an Xactimate type program that generates a full replacement cost value of the loss. That's my understanding at least.

Q: So you think that line 5 is based upon an estimate and use of the Xactimate program, correct?

A: That's my understanding.

Q: Line 8 says, line 8, One Hundred Sixty-Seven Thousand Eight Hundred Sixty-Six Dollars and Thirty-Four Cents ($167,866.34) and that's less deductibles, correct?

A: Yes.

9

Q: … what is the basis for line -- what is the basis for the amount in line 8?

A: I'm not certain.

Q: Do you know if line 8 considers or includes the amount that FEMA already paid under coverage A for your claim which would have been One Hundred Ninety-Seven Thousand Nine Hundred Twenty-Three Dollars and Forty-Nine Cents ($197,923.49)?

A: I don't know the answer to that.

(Doc. 32-5 at 60-62, Loolara Dep. 60:22-62:23).

- **Mr. Loolara could not verify that the Supplemental Proof of Loss and Estimate were accurate:**

Q: So did you have a chance to review this estimate before it was submitted with the letter by Pandit to FEMA?

A: They submitted a bunch of information to me, you know, throughout the process.

Q: Did you look over these numbers to see it if made sense, if it was accurate, if you agreed with it?

A: I reviewed it.

(Doc. 32-5 at 29-30, Loolara Dep. 64:25-65:8).

In sum, Mr. Loolara's deposition testimony establishes that he did not know who prepared the Supplemental Proof of Loss and Estimate; whether or when a representative of ATA Consulting inspected his home prior to preparing the Supplemental Proof of Loss and Estimate; how the numbers appearing on the Supplemental Proof of Loss were obtained; or whether the figures contained in the Supplemental Proof of Loss and Estimate were accurate. Further, when offered, Mr. Loolara declined to even review this testimony, much less change it by submitting an errata sheet. (Doc. 32-5 at 22, Loolara Dep. (Stipulation)).

Plainly, on this record, the Supplemental Proof of Loss and Estimate were *not*

10

based on Mr. Loolara's "own judgment." As such, Plaintiffs failed to comply with the SFIP's requirement that the proof of loss be based on the insured's "own judgment." SFIP, art. VII(J)(5), and Plaintiffs' Supplemental Proof of Loss and Estimate cannot provide a basis for recovery. *See, Mancini*, 248 F.3d at 734-35 (affirming summary judgment for defendant insurer based on insured's failure to satisfy SFIP's proof of loss requirements, where plaintiffs' proof of loss was based on figures produced by a third party without any indication that plaintiffs "believed [the] figures were correct"); *see also Paul v. Liberty Mut. Fire Ins. Corp.*, No. 18-CV-545, 2020 WL 3022490, at *5 (E.D. Tex. May 18, 2020) (Giblin, M.J.), *report and recommendation adopted*, 2020 WL 2992524 (E.D. Tex. June 3, 2020) (Crone, J.) (granting defendant insurer's motion for summary judgment based on insured's failure to satisfy SFIP's proof of loss requirements, where the insured "had never seen the additional [estimate] documents and he did not remember looking at them prior to signing his Proof Loss . . . [but acknowledged] they were apparently what were used to support his Proof of Loss"); *Wickler v. Am. Strategic Ins. Corp.*, No. 18-cv-569, 2020 WL 2373988, at *5 (E.D. Tex. Apr. 23, 2020) (Giblin, M.J.), *report and recommendation adopted*, 2020 WL 2322857 (E.D. Tex. May 11, 2020) (Crone, J.) (same, where the insured was "unaware of who had prepared the documents on her behalf," "had no knowledge as to how any of the amounts in the documents were calculated," and "had no knowledge of the [accompanying estimate] documents when she signed" the Proof of Loss).

11

      **b. The Court will not credit Plaintiffs' attempt to introduce a new affidavit that contradicts Mr. Loolara's deposition testimony**

Plaintiff responds by directing the Court's attention to a new affidavit, sworn by Mr. Loolara on October 1, 2020—one month after Defendants filed their summary judgment motion, almost one year after his deposition, and more than three years after signing the Supplemental Proof of Loss. (*See* Doc. 37-2). In this affidavit, Mr. Loolara provides a surprisingly cogent account of the events preceding the Supplemental Proof of Loss and Estimate, at least compared to his prior deposition testimony. For example, despite testifying at his deposition that he was "not aware" of anyone other than "Pandit" being involved in the preparation of the Estimate, Mr. Loolara swears in his affidavit that "It was, and is, my belief and understanding that the ATA Adjuster who assessed the flood damages to my Subject Property was an expert, authorized Flood Adjuster." (Doc. 37-2 at 2). Further, despite being unable to specify at his deposition whether and when an ATA representative visited his home, Mr. Loolara now states "As part of the investigation into the true extent of my flood loss, in July 2017, an adjuster ('ATA Inspector') visited the Subject Property and performed an on-site inspection." (Doc. 37-2 at 2). Even more, despite previously testifying only that he "reviewed" the Supplemental Proof of Loss and Estimate—and refusing to answer whether it "made sense," "was accurate," and/or he "agreed with it"— Mr. Loolara now swears "[i]n my judgment, the ATA Adjuster's assessment of the flood damages, which was supported by the ATA Estimate, accurately reflected the flood damages sustained to my Subject Property." (Doc. 37-2 at 2).

    In their reply, Defendants argue that Mr. Loolara's newly-minted affidavit

should be stricken under Local Rule 56(e) and the "sham affidavit doctrine," which provides that a non-moving party may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without adequate explanation. (Doc. 38 at 2-6).

As a general rule, a self-serving affidavit, standing alone, will not defeat a motion for summary judgment. *Spencer v. FEI, Inc.*, 725 F. App'x 263, 268 (5th Cir. 2018) (citing *DIRECTV, Inc. v. Budden,* 420 F.3d 521, 531 n.49 (5th Cir. 2005)). This rule applies with even greater force and effect when the proposed affidavit is a "sham." "[A] nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (citing authorities).

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Id.* (quoting *Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). The Court properly disregards a non-moving party's "sham" affidavit when weighing the evidence supporting summary judgment. *See id.* at 386-387.

Mr. Loolara's new affidavit presents a very different version of events resulting in the Supplemental Proof of Loss and Estimate. Further, Plaintiffs' "explanation" for Mr. Loolara's new affidavit—that it merely "clarif[ies] points which were not adequately examined by counsel at Loolara's deposition," (Doc. 41 at 3)—is simply not credible given the multiple disparities between Mr. Loolara's deposition testimony and his affidavit. Mr. Loolara was represented by counsel at his deposition;

13

he was thoroughly questioned about the circumstances and events resulting in the Supplemental Proof of Loss and Estimate; his testimony repeatedly revealed an inability to recall basic details; he declined the opportunity to review his testimony and (where appropriate) make changes; and his newfound recollection contradicts his prior testimony in precisely the manner required to manufacture an issue of fact. The sham affidavit rule applies squarely to these facts. *See Doe ex rel. Doe*, 220 F.3d at 386 (district court properly disregarded affidavit where, at prior deposition, affiant was represented by counsel, was thoroughly questioned, and offered testimony that contradicted statements in the affidavit). Accordingly, Mr. Loolara's affidavit will be stricken, and will not be considered.

Apart from Mr. Loolara's affidavit, Plaintiffs offer nothing to rebut Defendants' evidence that the Supplemental Proof of Loss and Estimate were *not* based on Mr. Loolara's "own judgment." SFIP, art. VII(J)(5). Again, "a party that fails to direct the Court's attention to any evidence supporting his claims cannot carry his burden of showing a genuine, material dispute." *CMFG Life Ins. Co.*, 2021 WL 1395768, at *1. Defendants are entitled to summary judgment on Plaintiffs' breach of contract claim.

### B. Plaintiffs' APA and mandamus claims fails as a matter of law

As stated, Plaintiffs' claims under the APA and the mandamus statute seek merely to compel Defendants to adjust Plaintiffs' Supplemental Proof of Loss in their favor. Having now determined that Plaintiffs' breach of contract claim fails, these additional claims must also fail. Quite simply, without any right to additional payment under the SFIP, Plaintiffs cannot compel Defendants to act. *See Riggs v. Johnson Cty.*, 6 Wall. 166, 73 U.S. 166, 193 (1867) ("Mandamus … is a remedy,

according to well-established principles and usages of law, to compel any person, corporation, public functionary, or tribunal, to perform a duty required by law, where the duty sought to be enforced is clear and undisputable, and the party seeking relief has no other legal remedy.").

Plaintiffs' claims under the APA and the mandamus statute will be dismissed.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motion to Dismiss (Doc. 46)** be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that **Defendants' Motion for Summary Judgment (Doc. 32)** be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the above-captioned action be and is hereby **DISMISSED WITH PREJUDICE**.

Judgment shall issue separately.

Baton Rouge, Louisiana, this 28th day of July, 2021

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**